UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,


       -against-                                       18-cr-0499 (LAK)


MIDENCE OQUELI MARTINEZ TURCIOS,

                            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION


         Appearances:


                        David J. Robles
                        Jacob H. Gutwillig
                        Trial Attorneys
                        DAMIAN WILLIAMS
                        UNITED STATES ATTORNEY

                        Kristen M. Santillo
                        Sarah A. Sulkowski
                        GELBER & SANTILLO PLLC
                        *Attorneys for Defendant*


LEWIS A. KAPLAN, *District Judge.*

        Defendant Midence Oqueli Martinez Turcios is a citizen and resident of Honduras who was indicted in this district on charges of conspiracy to import cocaine, possession of machine guns and destructive devices, and conspiracy to possess machine guns and destructive devices.[1] After being extradited to the United States, defendant moved to dismiss the charges on the grounds

---

[1]     Dkt 1 at 1-7.

2

that the government violated his Sixth Amendment right to a speedy trial or, alternatively, for a bill of particulars.[2]  In his reply memorandum, he seeks also the production of certain statements made by two government witnesses under *Brady v. Maryland* and *Giglio v. United States*.[3]  The motion is denied in all respects.

### *Facts*[4]

Defendant is a Honduran resident and former member of the Honduran National Congress.  In brief, the government alleges that defendant joined a drug trafficking organization in Honduras called the *Cachiros* in approximately 2004.[5]  He allegedly provided weapons, training, and strategy for its assassins — called *sicarios* — and supplied inside information on the movements of the Honduran military so that they could better avoid detection.[6]  During his time with the *Cachiros*, defendant is alleged to have participated in the murders or attempted murders of at least six different victims,[7] in addition to assisting with some of the group's basic drug trafficking operations by

---

[2]
        *See generally* Dkt 19 (Def. Mot.).

[3]
        Dkt 25 (Def. Reply) at 16-19.

[4]
        The Court assumes familiarity with the underlying facts and the procedural history and thus provides the minimal background necessary to decide the motions.

[5]
        Dkt 22 (Gov. Opp.) at 1.

[6]
        *Id.* at 2.

[7]
        *Id.* at 2-4.

managing transportation or security for shipments.[8]  The government asserts also that defendant received over $1 million in bribes from the *Cachiros* while he was in Congress in return for participating in various political corruption schemes, acting as the nominal owner of a money laundering front company, and providing the appearance of legitimacy to the organization.[9]

On July 17, 2018, the grand jury returned a three-count indictment charging defendant with (1) conspiring to import cocaine into the United States; (2) possession of machine guns and destructive devices; and (2) conspiring to possess machine guns and destructive devices.[10]  An arrest warrant for defendant was issued later that same day.[11]

The government represents that it submitted a draft provisional arrest request for defendant to the U.S. Department of Justice's Office of International Affairs ("OIA") on December 18, 2018,[12] which was approved on January 7, 2019.[13]  The government subsequently entered the provisional arrest request into the National Crime Information Center ("NCIC") "wanted persons"

---

[8]

    *Id.* at 5-6.

[9]

    *Id.* at 1, 6-7.

[10]

    *See generally* Dkt 1.

[11]

    Dkt 2.

[12]

    The government's opposition brief actually states that the draft provisional arrest request was submitted in December 2019, not 2018.  However, this date conflicts with the rest of the timeline that the government has laid out in its briefing.  Accordingly, the Court assumes that the opposition brief contains a typographical error and meant to state that the draft was submitted on December 18, 2018.

[13]

    Dkt 22 (Gov. Opp.) at 8.

4

database on January 17, 2019 and presented it to the U.S. State Department on January 29, 2019.[14]
The State Department in turn presented it to the government of Honduras on February 8, 2019.[15]

While awaiting defendant's arrest by the Honduran authorities, the government
maintains that it "performed periodic database checks for any updates regarding the defendant's
warrant status in NCIC."[16]  Defendant claims that he was living in Honduras directly across the street
from a military base at this time, and that he was aware of articles in the Honduran press reporting
by late-2018 that he had been indicted in the United States.[17]

Defendant was not arrested in Honduras until December 3, 2022.[18]  The government
states that the State Department presented its extradition request to the Honduran authorities by
January 4, 2023.[19]  Defendant was extradited on March 30, 2023 and was presented in this district
the next day.[20]

---

[14]

Id. at 8-9.

The government alleges that it was delayed "in submitting the provisional arrest request to
the U.S. Department of State" due to the shutdown of the U.S. government, which ceased
many of its operations from December 22, 2018 to January 25, 2019.  Id. at 9 n.9.

[15]

Id. at 9.

[16]

Id.

[17]

Dkt 25-1 (Martinez Aff.) at 1-2.

[18]

Dkt 22 (Gov. Opp.) at 9.

[19]

Id.

[20]

Dkt 5.

The Court held an initial pretrial conference on April 20, 2023, during which it set a discovery deadline of May 29, 2023.  According to defendant, the government produced "a two-terabyte hard drive's worth of documents and recordings" by that deadline.[21]  In addition, on November 6, 2023, the government met with defense counsel in response to their request for clarity on the charges against Martinez, during which it made a reverse proffer of evidence.[22]  It provided defense counsel with additional details of defendant's alleged conduct based principally on the anticipated testimony of its witnesses, two of whom — brothers Leonel Rivera Maradiaga and Javier Rivera Maradiaga ("the Riveras") — are former leaders of the *Cachiros* gang.[23]  Dissatisfied with the government's actions and disclosures, defendant filed this motion in December 2023.

## *Discussion*

1.    *Motion to Dismiss*

"Whether excessive delay violates the Speedy Trial Clause depends on a balancing of four factors: (1) the length and (2) reason for the delay, (3) whether the defendant timely asserted his rights, and (4) whether the defendant has been prejudiced by the delay."[24]  The first of these factors — length of delay — operates in essence as a "threshold" inquiry, "dividing ordinary from

---

[21]    Dkt 19 (Def. Mot.) at 3.

[22]    *Id.* at 3-4; Dkt 22 (Gov. Opp.) at 29-30.

[23]    Dkt 22 (Gov. Opp.) at 1, 30.

[24]    *United States v. Jones*, 91 F.3d 5, 7-8 (2d Cir. 1996) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

'presumptively prejudicial' delay."[25]  Once the delay in bringing a defendant to trial crosses the threshold into "presumptive prejudice," the Court must extend its "inquiry into the other three *Barker* factors" in order to determine whether there has been a violation of the Speedy Trial Clause.[26]

Here, the government concedes that the length of delay is presumptively prejudicial.[27] However, "presumptive prejudice does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger" a full balancing of all four *Barker* factors.[28]  And indeed, upon further inquiry, each of the other three *Barker* factors — the reason for delay, timely assertion of rights, and prejudice — weighs decisively against defendant.  Accordingly, there was no violation of defendant's Sixth Amendment rights.

A.    *Reason for the Delay*

Delays in prosecution can be characterized along a broad spectrum, with "diligent prosecution" at one end and "bad-faith delay" for tactical advantage at the other.[29]  While the former largely absolves the government of fault and the latter weighs heavily against it, the majority of cases

---

[25]

*United States v. Ghailani*, 733 F.3d 29, 43 (2d Cir. 2013) (quoting *Doggett v. United States*, 505 U.S. 647, 651-52 (1992)).

[26]

*United States v. Blanco*, 861 F.2d 773, 777 (2d Cir. 1988).

[27]

Dkt 22 (Gov. Opp.) at 12.

[28]

*Doggett*, 505 U.S. at 652 n.1 (internal quotation marks omitted).

[29]

*Id.* at 656.

concerns "conduct between these two extremes."[30]  That is, in instances of "official negligence,"
relief is neither compelled in every case nor "automatically tolerable simply because the accused
cannot demonstrate exactly how it has prejudiced him."[31]

        Here, the reasons for most of the delay in prosecution are not entirely clear.  Both
parties largely discuss the government's delay as one of "official negligence."[32]  But neither party
has shed light on why Honduras took so long to find and arrest defendant.  For present purposes, the
timeline boils down to this.  After indicting defendant in July 2018, the government took seven
months to submit the provisional arrest warrant to Honduras.  Honduran authorities then did not
arrest defendant until nearly four years later, after which the government submitted its request for
extradition in one month.[33]  Thus, of the four-and-a-half years between indictment and extradition,
only eight months are attributable to the government.[34]

---

[30]

    *United States v. Wade*, No. 08-cr-0120, 2015 WL 4475178, at *2 (S.D.N.Y July 22, 2015).

[31]

    *Doggett*, 505 U.S. at 657.

[32]

    *See* Dkt 19 (Def. Mot.) at 8; Dkt 22 (Gov. Opp.) at 13.

[33]

    Dkt 22 (Gov. Opp.) at 8-9.

[34]

    While the government attempts to exclude the December 2018 to January 2019 federal
government shutdown from the calculation of its delay, *see* Dkt 22 (Gov. Opp.) at 14, this
time is most appropriately weighed against the government rather than defendant.  *See, e.g.*,
*United States v. Tigano*, 880 F.3d 602, 614-15 (2d Cir. 2018) ("Administrative delays" are
"not the defendant's responsibility," and thus "are counted against the government").
Regardless, it does not affect the Court's analysis.

    In contrast, defendant contends that the government's pre-indictment investigatory period
should factor heavily against the government.  *See* Dkt 25 (Def. Reply) at 2-3.  While courts
*can* take this period into consideration when assigning blame, the Court here declines the
invitation, particularly because doing so would not change the analysis that the post-
indictment delay was primarily attributable to Honduras rather than the United States.

Certainly, the government "is under an obligation to exercise due diligence in attempting to locate and apprehend the accused, even if he is a fugitive who is fleeing prosecution."[35] Nonetheless, "when a suspect for whom an arrest warrant has been issued evades arrest in the first state and absconds to [another] jurisdiction," the government is "entitled to rely in good faith upon the efforts of [that] jurisdiction."[36] Contrary to defendant's assertions, that is the case whether defendant is hiding out in an uncooperative jurisdiction or one from which defendant may be extradited.[37]

In this instance, the government discharged its obligation to request extradition from Honduras within seven months of indicting defendant and continued to perform its own monitoring by entering the arrest warrant into the NCIC "wanted persons" database and performing periodic checks of it.[38] This was sufficient to meet its duty to prosecute in cooperation with a foreign state. The government is "under no obligation to attempt to mount a manhunt in a sovereign nation in an effort to assist [foreign] authorities in executing their provisional arrest warrant, at least in the absence of evidence that [the foreign jurisdiction] was not making a proper effort to arrest."[39] The

---

[35]

*Rayborn v. Scully*, 858 F.2d 84, 90 (2d Cir. 1988).

[36]

*Id*. at 91.

[37]

*Compare Garcia Montalvo v. United States*, 862 F.2d 425, 426 (2d Cir. 1988), *and United States v. Diacolios*, 837 F.2d 79, 82 (2d Cir. 1988), *with Rayborn*, 858 F.2d at 91, *and United States v. Stone*, 510 F. Supp. 2d 338, 343 (S.D.N.Y. 2007). C*f. Blanco*, 861 F.2d at 778 (government's duty is to request extradition from foreign jurisdiction once extradition treaty exists between nations and is enforceable).

[38]

Dkt 22 (Gov. Opp.) at 14-15.

[39]

*Stone*, 510 F. Supp. 2d at 343 (citing *Rayborn*, 858 F.2d at 91).

Court cannot fault the government for any but eight months of the delay.

      B.     *Defendant's Assertion of His Speedy Trial Right*

"[W]hen it is manifestly apparent that a defendant has no serious interest in the speedy prosecution of the charges against him, a court need not ignore the defendant's fugitivity or recalcitrance in determining whether his sixth amendment rights have been violated."[40]  This is particularly true where a defendant admittedly *knew* about his indictment and still did nothing to cooperate or assert his right to a speedy trial.[41]

Defendant admits that he "became aware [in 2018] that some Honduran press outlets were reporting that [he] had been indicted in the United States."[42]  But there is no evidence that he demanded or sought a speedy trial.  Instead, he simply remained in Honduras.

Defendant seeks to justify his inaction by asserting that he "believed these [press] reports were inaccurate" because he "was living openly near a police barracks and was never

---

[40]

    *Rayborn*, 858 F.2d at 92.

[41]

    *See, e.g.*, *United States v. Estremera*, 531 F.2d 1103, 1106-08 (2d Cir. 1976) (appellant who was aware of his warrant and took steps to avoid arrest would not be rewarded for "us[ing] every tactic at his command to remain outside the United States in order to prevent a speedy trial."); *Rayborn*, 858 F.2d at 92 (same)*; United States v. Schreiber*, 535 F. Supp. 1359, 1363 (S.D.N.Y. 1982) ("The speedy trial requirements should not operate to reward a recalcitrant and reluctant defendant."); *Stone*, 510 F. Supp. 2d at 343 (defendant who "concededly has known of the indictment since 2002 and done nothing either to proceed to trial or to assert the claim now asserted" cannot later claim violation of Speedy Trial Clause).

[42]

    Dkt 25-1 (Martinez Aff.) at 2.

contacted by the authorities."[43]  He effectively asks the Court to (1) credit his unsubstantiated belief that multiple Honduran media outlets were reporting falsely, and (2) reward his inaction in uncritically adopting that premise.  Such an excuse strains credulity to say the least.  During the more than four years between his indictment and arrest, many of defendant's alleged associates who were subjects of similar reports were arrested and extradited to the United States.[44]  Defendant would have had to have buried his head in the sand to think that only reports of *his* indictment were "inaccurate."  Moreover, defendant states that one of the reasons he did not believe the press reports was because he "was never contacted by the authorities," but the only way that their inaction over time could have solidified this belief is if *he* also took no action in the meantime to confirm or refute the reports, something which in effect he admits.  Thus, for defendant to assert a speedy trial violation now, he at the least should have made *some* inquiry about the legitimacy of his reported charges.  Barring that — and given his admission that he "became aware" of multiple reports of his indictment soon after it was brought — this *Barker* factor also weighs heavily against defendant.

### C.    *Prejudice*

Finally, defendant asserts that prejudice to his defense should be presumed from the five-year delay in bringing this case to trial.[45]  While it is true that "length of delay alone [can] support[] a showing of prejudice" in "exceedingly rare instances," courts generally consider only that

---

[43]     *Id.*

[44]     *See, e.g.*, Dkt 19 (Def. Mot.) at 9 n.1; Dkt 22 (Gov. Opp.) at 18-19.

[45]     *See* Dkt 19 (Def. Mot.) at 10-11; Dkt 25 (Def. Reply) at 9-10.

part of the delay caused by the government when making such determinations.[46]  Moreover, a defendant typically "cannot sustain a Sixth Amendment claim absent 'some additional compelling circumstance, such as bad faith by the prosecution or actual prejudice.'"[47]

Here, as discussed above, only eight months of the delay in bringing defendant before this Court are attributable to the government.  A delay of less than a year is nowhere near enough to grant defendant a presumption of prejudice,[48] particularly where defendant admittedly knew of his indictment for over four years before his arrest, did nothing to investigate it, and *could have gathered witnesses and evidence during that period*.  And when coupled with the court system's general reluctance to find a speedy trial violation absent a showing of "genuine prejudice," defendant is required to make a showing of a particular effect on his defense caused by the government's delay.[49]

Defendant falls woefully short in this regard as well.  The only specific claims of prejudice that he articulates are that his memory and the memories of any witnesses have faded

---

[46]

        *United States v. Moreno*, 789 F.3d 72, 82 (2d Cir. 2015) (weighing only 10 months out of a 27-month delay against the government when determining prejudice); *see also Doggett*, 505 U.S. at 657-58 (attributing only 6 years out of an 8.5-year delay to the government); *United States v. Palmer*, No. 14-cr-652, 2021 WL 3932027, at *13 (S.D.N.Y. Sept. 1, 2021).

[47]

        *Moreno*, 789 F.3d at 82 (citing *Jones*, 91 F.3d at 9).

[48]

        *Id.* (10-month delay did not justify presumption of prejudice); *United States v. Williams*, 372 F.3d 96, 113 (2d Cir. 2004) (requiring defendant to articulate actual prejudice, even with three-year delay in prosecution, and upholding district court's finding that he failed to do so); *Palmer*, 2021 WL 3932027, at *13 (27-month delay not presumptively prejudicial); *United States v. Cavan*, No. 09-cr-1120, 2016 WL 4098582, at *6 (S.D.N.Y. July 28, 2016) (34-month delay insufficient for presumption of prejudice).

[49]

        *Rayborn*, 858 F.2d at 94.

significantly over time and that it will be challenging to locate documentary evidence in Honduras.[50] Yet a speedy trial claim cannot succeed where a defendant completely "fail[s] to articulate prejudice from the delay with any specificity, only to say that 'Witnesses have disappeared; recollections are dim; and the investigation is impaired.'"[51] Defendant does not, and perhaps cannot, name a single witness or piece of evidence that he no longer can access; does not point to any of the six alleged murder attempts to explain how any of them will be difficult to recall or discuss at trial; and does not provide any clarity on how his or anyone else's memory is particularly affected.  Without an "articulable ground for a finding of prejudice,"[52] this *Barker* factor must weigh against defendant as well.

Accordingly, analysis of all four *Barker* factors demonstrates that defendant's Sixth Amendment rights have not been violated in this instance.  Defendant's speedy trial claim is without merit.

2.    *Bill of Particulars*

In the alternative to dismissal, defendant moves for a bill of particulars, contending that he is prejudiced by the lack of specificity in the indictment and discovery to date and requesting that the government identify alleged co-conspirators, dates, locations, and circumstances of certain

---

[50]    *See* Dkt 19 (Def. Mot.) at 10-11; Dkt 25 (Def. Reply) at 10.

[51]    *Williams*, 372 F.3d at 113.

[52]    *United States v. Cabral*, 979 F.3d 150, 164 (2d Cir. 2020).

relevant events.[53]  A bill of particulars "is not . . . a discovery device or investigative tool,"[54] and one "is merited 'only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'"[55] When instead "[w]hat defendant seeks is in the nature of the 'wheres, whens and with whoms' . . . Courts have held [such requests] to be beyond the scope of a bill of particulars."[56]

Here, the government not only tracked the language of the statute in the indictment and provided basic facts to defendant,[57] but it has supplemented the indictment with discovery providing defendant with key pieces of evidence against him, a reverse proffer laying out much of the government's anticipated case, and now a first-hand description of the government's case as detailed in its opposition brief.[58]  While defendant maintains that a bill of particulars nonetheless is needed to "cabin the [g]overnment's proof and avoid unfair surprise,"[59] he demands in essence that

---

[53]

Dkt 19 (Def. Mot.) at 11-14.

[54]

*United States v. Stein*, 424 F. Supp. 2d 720, 724 (S.D.N.Y. 2006).

[55]

*United States v. Schlesinger*, 261 F. App'x 355, 359 (2d Cir. 2008) (quoting *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990)).

[56]

*United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001).

[57]

*See generally* Dkt 1; *United States v. Salazar*, 485 F.2d 1272, 1277 (2d Cir. 1973) ("[W]e have consistently sustained indictments which track the language of a statute and, in addition, do little more than state time and place in approximate terms.").

[58]

*See* Dkt 22 (Gov. Opp.) at 1-7, 28-30.

[59]

Dkt 25 (Def. Reply) at 14.

the prosecution "particularize all of its evidence," something which it is not required to do.[60]  Indeed, the government already has gone far beyond what is necessary under law — the Court will not require it to do any more.

*3.*      Brady *Motion*

Finally, defendant seeks discovery under *Brady* of (1) "any statements of the Riveras that mention Martinez but fail to mention the violent acts of which they accuse him now"; (2) "any previous proffers or testimony [from the Riveras] about any of the alleged incidents they now claim Martinez was involved in, but [which] failed to mention Martinez's playing a role"; and (3) "all proffers by the Riveras which explained the operation of the *Cachiros* drug-trafficking organization and identified targets for investigation to the Government, but did not mention Martinez."[61] Defendant contends that such information would be material to his defense because it would tend to impeach the credibility of the Riveras as witnesses and display inconsistency in their allegations against him.[62]

As an initial matter, defendant's *Brady* motion is not properly before the Court.  An issue raised for the first time in a party's reply is deemed to have been forfeited.[63]  Because defendant

---

60

  *United States v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991) (citing *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988)).

61

  Dkt 25 (Def. Reply) at 17-18.

62

  *Id.* at 16-19.

63

  *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010) (citing *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998)).

only raised this *Brady* motion in the last few pages of the reply brief to his motion to dismiss, the government had no opportunity to respond to the motion or provide any information regarding efforts taken to comply with its *Brady* obligations.  On this ground alone, defendant's motion is denied.

Even if defendant's *Brady* motion were properly before the Court, however, it would fall short of justifying any relief.  While *Brady* and its progeny impose an obligation on the government to disclose exculpatory evidence to the defense, that obligation only extends to evidence that would be "material to guilt or punishment."[64]  And evidence is material only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[65]  As such, a *Brady* violation is appropriately evaluated "*following* a conviction, as only then is a court in a position to determine whether disclosure of previously undisclosed information likely would have produced a different outcome."[66]  Indeed, as the Second Circuit made clear in *United States v. Coppa*, "the scope of the government's constitutional duty [under *Brady*] — and, concomitantly, the scope of a defendant's constitutional right — is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial."[67]

---

[64]

 *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987).

[65]

 *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

[66]

 *United States v. Blaszczak*, 308 F. Supp. 3d 736, 740 (S.D.N.Y. 2018).

[67]

 267 F.3d 132, 140 (2d Cir. 2001).

Such is the case in the instant motion.  While impeachment evidence *may* be material where a witness's credibility is "determinative of guilt or innocence,"[68] defendant has not shown definitively that failure now to provide the requested evidence would prejudice him such that it will "produce[] a different verdict" at trial.[69]  Any inconsistencies in the Riveras' prior statements or proffers concerning Martinez may prove to be material to their credibility — but it is equally likely that they would prove to be so minor or tangential to the relevant issues that they would provide no basis for impeachment or that there would be sufficient evidence from other witnesses on which to convict Martinez.  Moreover, defendant requests more than just inconsistencies in the Riveras' prior statements — rather, he seeks production of *any* statements or proffers previously made to the government by the Riveras concerning this matter that either do not implicate Martinez specifically or fail to tie him to all of the violent acts for which he is now accused.[70]  Not only may such statements prove to be immaterial, but they may not be exculpatory at all — defendant's request is so broad that it would sweep in instances on which the Riveras were asked specifically to provide information on a codefendant and did not happen to mention Martinez, or where the Riveras were asked only about one act of violence by Martinez and did not digress to discuss others.  With such a broad request that plainly demands immaterial evidence, and without greater specificity, the Court could not tailor a specific order even if doing so at this point otherwise were appropriate.

---

[68]

    *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).

[69]

    *Strickler*, 527 U.S. at 281.

[70]

    Dkt 25 (Def. Reply) at 16-19.

In sum, the Court does not know at this stage what evidence the government has in its possession, and it would be impossible to predict which pieces of that evidence would prejudice defendant were they not disclosed. In these circumstances, then, any violation of defendant's constitutional rights will have to be "defined retrospectively."[71] The government is of course reminded of its obligations under *Brady* and is expected to comply with them.

### Conclusion

For the foregoing reasons, the defendant's motion to dismiss (Dkt 19) is DENIED in all respects.

SO ORDERED.

Dated:        June 26, 2024

_____
Lewis A. Kaplan
United States District Judge

---

[71]    *Coppa*, 267 F.3d at 140.