| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

      -against-                                                                                                                       18-cr-0499 (LAK)

MIDENCE OQUELI MARTINEZ TURCIOS,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM AND ORDER

Appearances:

                                David J. Robles
                                Jacob H. Gutwillig
                                Assistant United States Attorneys

                                Kristen M. Santillo
                                Sarah A. Sulkowski
                                GELBER & SANTILLO PLLC
                                *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

            Defendant pled guilty to conspiracy to import 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(a)(3), 960(b)(2)(B)(ii). Four issues are in dispute for sentencing purposes: (1) whether defendant engaged in violence, including murder, attempted murder, and torture, as set forth in paragraphs 24 to 31 of the initial presentence report ("PSR"), (2) whether defendant trained hitmen and acquired firearms for the Cachiros drug trafficking organization and assisted them in transporting their cocaine shipments across Honduras, as set forth in paragraphs 23 and 32 to 34 of the PSR, (3) whether defendant acted as a nominal owner of a

2

company that was sanctioned by the Office of Foreign Assets Control ("OFAC") while he was a congressman, as set forth in Paragraph 35 of the PSR, and (4) whether defendant participated in a discussion about paying bribes to Honduran politicians at a video-recorded January 2014 meeting, at which the defendant and other drug traffickers were present, as set forth in paragraph 37 of the PSR.

On December 12 and 16, 2024, the Court conducted a *Fatico* hearing regarding these issues. The hearing featured one witness, Leonel Rivera Maradiaga ("Rivera"), defendant's cousin who was one of the leaders of the Cachiros. Rivera testified substantially to the disputed facts contained in the PSR. Following the hearing, defendant submitted post-hearing materials, including affidavits from several Honduran nationals, and the Government submitted Section 3500 material for cooperating witnesses who previously provided information concerning defendant's involvement in the disputed acts of violence and drug trafficking conduct.

*Discussion*

As an initial matter, the affidavits are not significantly probative with respect to the disputed facts. Most importantly, none of the affiants purports to have firsthand knowledge of the disputed facts. None claims that he or she witnessed the acts of violence at issue, participated in the Cachiros's operations, was involved in the OFAC-sanctioned company, or was present at the video-recorded January 2014 meeting. Rather, the affidavits speak to minor points, such as whether defendant was issued a congressional license plate or whether defendant had a good relationship with journalists. Accordingly, and accepted at face value, they would not contradict the thrust of the

3

disputed allegations in the PSR or Rivera's testimony. Accordingly, defendant's request to reopen the *Fatico* hearing to hear testimony from Honduran witnesses is denied.

Defendant seeks to discredit Rivera's testimony by (1) pointing to claimed inconsistencies between Rivera's testimony and the PSR, (2) identifying alleged inconsistencies between Rivera's testimony here and his testimony in another proceeding, and (3) attacking his credibility on collateral matters.

The inconsistencies among Rivera's testimony at the *Fatico* hearing, the PSR, and in another proceeding are insignificant. Rivera's account of each disputed act of violence was detailed and credible. The disparities between the PSR and Rivera's testimony involve the precise information defendant provided to the Cachiros to facilitate a murder of a rival drug trafficker, whether a group of sicarios was answerable to defendant or to the Cachiros generally, and whether defendant pulled the trigger or merely arranged the killing of one victim, among other ancillary details. To the extent such discrepancies exist, the PSR will be updated to reflect Rivera's testimony at the hearing as detailed below. As to Rivera's testimony in another proceeding, there are no substantive inconsistencies with his testimony at the *Fatico* hearing.[1]

The collateral attacks on Rivera's credibility do not discredit his otherwise detailed and credible testimony. In chief, defendant points to Rivera's testimony that, since his arrest, the only communications he has had with his brother, Javier, have been questions about Javier's well being passed through their mother or Rivera's wife.[2] Recordings of jail telephone calls show that

---

[1] *See* Dkt 55 at 22–23, 26–27.

[2] Dkt 51 at 9–11.

4

Rivera in fact provided his wife with substantive information to give Javier in connection with Javier's proffers relating to another Honduran defendant. This inconsistency does not undermine meaningfully Rivera's credibility. First, when asked directly whether he had ever talked about the details of a case with Javier, Rivera answered, "I don't remember." There is no persuasive reason to conclude that Rivera perjured himself as defendant claims. Second, the calls took place in 2021 and do not relate to defendant or defendant's case.

[Redacted from publicly filed copy.  Complete opinion filed under seal.]

5

### *Conclusion*

For the foregoing reasons, the Court credits the bulk of Rivera's testimony at the *Fatico* hearing. Accordingly, the Court accepts the presentence report with the modifications reflected in a sealed order issued contemporaneously with this opinion.

SO ORDERED.

Dated:	February 24, 2025

―――――――――――――――――――――――
̈Lewis A. Kaplan
United States District Judge